EMAS, J.,
dissenting.
I respectfully dissent from the per cu-riam affirmance and write to explain my reasons.

*48
BACKGROUND

In 2008, defendant Jabier Vargas entered a guilty plea (Case No. 08-12484) to burglary of a vehicle and was sentenced to 364 days in the Dade County jail, followed by one year probation. He was later charged with several felonies in three new cases (08-27161, 08-35378, 09-37366), and with a violation of probation in his initial case (08-12484).
On March 18, 2010, Vargas entered a negotiated plea of guilty (and an admission to the violation of probation) and the trial court imposed sentences of ten years’ state prison on all four cases, the sentences to run concurrently with each other.[1]
On July 7, 2010, Vargas filed a motion for posteonviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In his motion, Vargas alleges in pertinent part:
Defendant specifically inquired to trial counsel as to whether the 10 year sentences in each case would be imposed concurrent and coterminous to each other. Trial counsel affirmatively advised Defendant that the sentences would be imposed coterminously to each other. Trial counsel was ineffective because of his misadvise [sic]. The Florida Department of Corrections is applying the sentences in the instant case concurrently, not coterminously, because this court ordered it so. Absent trial counsel’s affirmative misadvice, Defendant would not have pleaded guilty.
On August 24, 2010, the trial court entered an order denying the motion without an evidentiary hearing.[2] The order states two grounds for the summary denial:
1. The defendant seeks to be resen-tenced coterminously to ten years in state prison in each of the cases. However, such a resentencing would have no effect on the actual time the defendant would serve in custody.
2. During the plea colloquy, Vargas “waived all rights to future Rule 3 filings.”
The order attached a copy of the plea colloquy.

DISCUSSION

A. Whether coterminous sentences would have affected the amount of time actually served.

As to the first ground for denial, whether or not coterminous sentences would have actually affected Vargas’ sentence is not relevant at this stage.[3] Vargas has filed a facially sufficient motion for post-conviction relief, and is entitled to an evi-dentiary hearing unless “the motion, files, and records of the case conclusively show *49 that movant is entitled to no relief.” Fla. R.Crim. P. 3.850(d). There is no evidence in the record to support the trial court’s finding that a coterminous sentence would have no impact on the amount of time Vargas would actually serve.[4]
Even if such evidence was in the record, however, Vargas would still be entitled to an evidentiary hearing, because the question is not whether a coterminous sentence would in fact have any effect on the amount of time actually served,[5] but whether Vargas was advised of this and whether Vargas would have entered the plea had he known that the sentences were not coterminous. If Vargas was advised, for example, that his sentences would be coterminous; that, as a result, he would serve only nine years on his ten-year sentences; and that he entered the plea under this (mistaken) belief, Vargas could claim that, but for the affirmative misadvice, he would not have entered the plea.[6]
Although the accuracy of his belief (i.e., whether a coterminous plea would in fact have resulted in a lower sentence) may be relevant to a determination on the merits following an evidentiary hearing, it is not relevant to a determination of whether Vargas is entitled to an evidentiary hearing. At that hearing, Vargas would have the burden of establishing that:
1.Vargas’ counsel advised him that the sentences imposed would be coterminous; and
2. Vargas, as a result of this advice, believed the amount of time actually served would be reduced by a coterminous sentence; and
3. There is a reasonable probability that, absent this advice from counsel, Vargas would not have entered the plea but would have insisted on going to trial.
Grosvenor v. State, 874 So.2d 1176 (Fla.2004). See also Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

B. Whether Vargas waived his right to file ang postconviction motions under Rule 3.850.

The transcript of the plea colloquy (attached to the trial court’s order) evidences that, when the case was called, the following exchange took place:
DEFENSE ATTORNEY: I think we have a resolution as to the Vargas cases. We have [ ] counter offered 10 years and he will accept the 10 years.
THE COURT: Swear the defendant please.
DEFENSE ATTORNEY: Close out all cases with credit time served.
Vargas was then sworn and the following colloquy took place:
THE COURT: Do you understand that you do not have to plead guilty in this *50 case if you don’t want to nor admit to your violation of probation. You could choose to go to trial and have a hearing before me with regards to your violation of probation. But if you’re found to be in violation of your probation by me or guilty by a jury in all these cases you could be sentenced to a total of?
PROSECUTOR: Forty years state prison.
THE COURT: Do you understand that?
DEFENDANT: Yes. I understand that.
THE COURT: 30 years minimum mandatory?
PROSECUTOR: No.
THE COURT: State of Florida would have to prove the charges against you beyond a reasonable doubt. These would have been trials by a jury. You would have the right to testify in this trial. If you chose not to testify I would explain to the jury that they may not consider that decision against you in any way.
You have the right to call witnesses to testify on your behalf and question those that testify against you. And if the jury found you guilty you have the right to an appeal.
Do you understand that you’re now giving up those rights?
DEFENDANT: Yes, sir I do.
THE COURT: Anyone forced you or threatened you to do this?
DEFENDANT: No, sir.
THE COURT: Are you doing this of your own free will?
DEFENDANT: Yes, I am.
THE COURT: Do you understand that if you are not a citizen of the United States the taking of this plea could subject you to deportation?
DEFENDANT: Yes, sir I do.
THE COURT: With regards to your violation of probation the State of Florida would have to prove by a preponderance of the evidence that you violated your probation. You could question those that testify against you and if I found that you violated your probation you could appeal my decision. Do you understand that as well?
DEFENDANT: Yes. I understand that sir.
THE COURT: Okay. Now, has the State disclosed all items of physical evidence in discovery and are you aware of any items of physical evidence in which DNA testing could exonerate this defendant?
PROSECUTOR: State has disclosed all and is aware of none.
THE COURT: All right. And you are not aware of any items?
DEFENSE ATTORNEY: Well, as we speak we are not. I have not reviewed the file but my understanding is that we have copies of all the DNA and all the disclosures.
THE COURT: Do you understand there is no further discovery in these cases? Do you understand that?
DEFENDANT: Yes, I understand that.
THE COURT: Okay.
DEFENDANT: Does that also eliminate probation that I have?
THE COURT: Eliminates everything and Rule Three’s as well.
DEFENDANT: Everything. Okay.
THE COURT: Nothing going to the Third District and the Court of Appeals. You are not having a trial. This ends it all. Do you understand that?
DEFENDANT: Yes. I understand that.
*51 THE COURT: You’re in agreement with that?
DEFENDANT: Yes.
THE COURT: Okay.
(Emphasis added.)
The transcript does not establish that Vargas made a knowing and voluntary waiver of his right to seek postconviction relief. Such a waiver was not announced by the prosecutor or defense counsel as a part of the plea, and there is no evidence in the record that Vargas and his counsel ever discussed such a waiver as a part of the negotiated plea. The trial court’s statement was in response to Vargas’ question whether this plea would terminate his probation. The trial court did not question Vargas about his understanding of “Rule S’s” or whether he understood that “nothing going to the Third District and the Court of Appeals” meant that he could not seek postconviction relief.[7] A waiver of postconviction rights, to be valid, must be knowingly and voluntarily made. See, e.g., Leach v. State, 914 So.2d 519 (Fla. 4th DCA 2005) (upholding waiver of appellate rights where colloquy reflected that waiver was announced on the record by counsel, court permitted defendant to consult with attorney regarding waiver, then questioned defendant and determined that defendant had had enough time to consult with his lawyer and that he understood the ramifications of waiving his right to appeal). See also Stahl v. State, 972 So.2d 1013 (Fla. 2d DCA 2008) (holding a defendant can waive his right to collaterally attack his judgment and sentence when the waiver is expressly stated in the plea agreement and he knowingly and voluntarily agrees to the waiver). The record is, in my opinion, insufficient to establish that defendant made a knowing and voluntary waiver of his right to seek postconviction relief.
But even if a proper waiver could be found, Vargas alleges that it was predicated upon affirmative misadvice from his counsel that his sentences would run coter-minously. If he can prove this claim, any such waiver would be invalid, since he was induced to enter a plea, and received a sentence, that he did not bargain for.[8]
Although it may be tempting to conclude that Vargas’ claim is without merit, we are called upon at this stage only to determine whether Vargas is entitled to an evidentia-ry hearing. Claims of affirmative misad-vice of counsel are concededly vexing for the trial court because they are often made without a good faith basis, but a determination on the merits can seldom be made upon the existing record. Where no evi-dentiary hearing is granted by the trial court, this Court must accept defendant’s *52 factual allegations as true unless they are conclusively refuted by the record. Hernandez v. State, 20 So.3d 417 (Fla. 3d DCA 2009); Fla. R.Crim. P. 3.850(d).
Based upon the existing record, I conclude that Vargas is entitled to an eviden-tiary hearing, and therefore must respectfully dissent.

. On the three new cases, Vargas was classified as a habitual felony offender.

. The trial court’s order refers to Vargas’ motion as a motion to correct illegal sentence, rather than a motion for postconviction relief. Vargas’ motion does not contend that the sentence is illegal under Rule 3.800, but rather alleges affirmative misadvice and ineffective assistance of counsel resulting in a plea he otherwise would not have accepted.

. Such a consideration would certainly be relevant to determining the credibility of Vargas' claim that, absent the affirmative misad-vice of his counsel, Vargas would not have pled guilty. At an evidentiary hearing, the court must determine, in part, whether this assertion by Vargas is credible. A part of that determination would likely include consideration of what impact, if any, a coterminous plea would have had on the amount of time actually served. If a coterminous plea would have had no impact on the amount of time actually served, the trial court can weigh this in assessing: (1) whether counsel actually made this representation to Vargas; and (2) whether Vargas has established a reasonable probability that, but for the coterminous nature of the sentences, he would not have entered a guilty plea.

. For example, if Vargas is entitled to credit for the time he served in the Dade County Jail on his probation case (08-12484), coterminous sentences would apply that jail credit to all four of his cases.

. This is why it is a claim for affirmative misadvice. By definition, these types of post-conviction claims assume that the advice allegedly given turns out to be inaccurate. The gravamen of the claim is that a defendant was given this advice, it induced him to plead guilty, he later found out the advice was incorrect, and but for the misadvice there is a reasonable probability that he would not have entered die plea.

.The trial court in its order noted that the relief Vargas sought in his pro se motion is a resentencing to coterminous sentences. However, Vargas also sought "any other relief the Court deems just and fair.” In the body of his motion, Vargas asserts that, but for this affirmative misadvice, he would not have entered the plea. If Vargas can prove his claim at an evidentiary hearing, he would be entitled to withdraw his plea.

. The standard plea colloquy requires advising a defendant that by pleading guilty he gives up certain direct appellate rights. See Fla. R.Crim. P. 3.172(c)(4) ("[T]he trial judge should ... place the defendant under oath and shall address the defendant personally and shall determine that he or she understands ... that he or she gives up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence, but does not impair the right to review by appropriate collateral attack.”)

. In Stahl, the Fourth District also held that a defendant cannot waive ineffective assistance of counsel claims attacking the advice received from counsel in entering into the plea and waiver. Stahl, 972 So.2d at 1015 (citing Nixon v. United States, 2006 WL 2850430, at *2 (S.D.Ga.2006)). See also United States v. White, 307 F.3d 336, 343 (5th Cir.2002) ("[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself ... [A]n impermissible boot-strapping arises where a waiver is sought to be enforced to bar a claim that the waiver itself — or the plea agreement of which it was a part — was unknowing or involuntary.”).